TERRY GRAMMER, APPELLANT, V. ENDICOTT CLAY PRODUCTS AND COLUMBIA INSURANCE GROUP, APPELLEES.

562 N.W.2d 332

Filed April 18, 1997.   No. S-96-161.

Rod Rehm and, on brief, Thomas E. Stine, of Rod Rehm, P.C., for appellant.

Dallas D. Jones and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

In this workers' compensation case, the plaintiff-appellant employee, Terry Grammer, sought a waiting-time penalty from the defendants-appellees, the employer, Endicott Clay Products, and its insurer, Columbia Insurance Group. The Nebraska Workers' Compensation Court denied such penalty; the Nebraska Court of Appeals thereafter reversed the compensation court's decision. See *Grammer v. Endicott Clay Products*, 96 NCA No. 44, case No. A-96-161 (not designated for permanent publication). Endicott and Columbia successfully sought further review by this court; we now affirm the judgment of the Court of Appeals.

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Winn v. Geo. A. Hormel & Co., ante* p. 29, 560 N.W.2d 143 (1997). However, as to questions of law, an appellate court is obligated in workers' compensation cases to make its own determinations. *Winn, supra.*

Grammer suffered injuries to his right shoulder and neck as a result of an accident arising out of and in the course of his employment as a laborer for Endicott when he fell from a forklift on January 23, 1992. At the present stage of the litigation, none of the parties contest these facts or the compensation court's ultimate finding that Grammer was entitled to benefits as provided under the Nebraska Workers' Compensation Act. See Neb. Rev. Stat. §§ 48-101 (Reissue 1993) and 48-118 (Cum. Supp. 1996). The only issue in contention is whether Grammer was entitled to a waiting-time penalty as part of his award.

Neb. Rev. Stat. § 48-125(1) (Reissue 1993) provides in part:
Except as hereinafter provided, all amounts of compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death; *Provided*, fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability.

Columbia received notice of Grammer's permanent partial disability rating on March 28, 1994. Shortly thereafter, Columbia telephoned Grammer to inquire whether he wished to receive his benefits in a lump sum or in weekly payments. Grammer elected neither. On April 20, Columbia sent Grammer a letter confirming the conversation and once again outlining the alternatives. Grammer did not respond. Thereafter, but before May 2, Columbia again contacted Grammer by telephone, at which time Grammer was still uncertain as to how he wanted to be paid. Because Grammer failed to elect, Columbia computed the amount of weekly disability benefits due to date and paid them on May 2, 5 days after the 30-day period had elapsed.

In seeking to reinstate the judgment of the compensation court, Endicott and Columbia seize upon a portion of the opinion in *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989), quoting from 3 Arthur Larson, The Law of Workmen's Compensation § 83.41(c) (1989), and urge that a waiting-time penalty is not appropriate here, as bona fide settlement negotiations were in process. In *Musil*, the claimant had been paid temporary total disability benefits and had been offered a lump-sum settlement based upon a 22-percent permanent partial disability of the body as a whole. The employer paid no benefits for permanent partial disability, and the compensation court ultimately determined that the claimant was totally disabled. In holding that the evidence supported the award of the compensation court and that the claimant was entitled to a waiting-time penalty, we wrote:

As we stated in *Roesler v. Farmland Foods*, 232 Neb. 842, 442 N.W.2d 398 (1989), "As is well known, where there is no reasonable controversy regarding an employee's

entitlement to workers' compensation, Neb. Rev. Stat. § 48-125 (Reissue 1988) authorizes award to the employee of an attorney fee and a 50-percent payment for waiting time on delinquent payments." And, as contended by [Musil on cross-appeal], the worker is entitled to recover interest on the payments which have accrued at the time payment is made by the employer. § 48-125(2).

Although there is a controversy in regard to the nature and extent of [Musil]'s permanent disability, there is no evidence to support a contention that [she] has no permanent disability. To avoid the payments assessable under § 48-125, an employer need not prevail in opposition to an employee's claim for compensation, but must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

In 3 A. Larson, The Law of Workmen's Compensation § 83.41(c) at 15-1433 to 15-1435 (1989), the author states: "If bona fide settlement negotiations accompany the non-payment of compensation, this may purge the delay or refusal of unreasonableness, but the fact that some settlement offer has been made is not necessarily a defense. A question that has arisen in several jurisdictions is whether a penalty should apply when the employer admits liability for a lesser amount than that claimed, but pays nothing. *It is usually held that the employer should have paid at least the amount for which liability was undisputed, and that a penalty is therefore warranted.*" (Emphasis supplied.)

In *Holton v. F.H. Stoltze Land Lbr. Co.*, 195 Mont. 263, 637 P.2d 10 (1981), the court held that although the total amount of compensation may be in dispute, the employer's insurer has a duty to promptly pay any undisputed compensation, and that the only legitimate excuse for delay of compensation is the existence of genuine doubt from a medical or legal standpoint that any liability exists. See, also, *Berry v. Workmen's Comp. App. Bd.*, 276 Cal. App. 2d 381, 81 Cal. Rptr. 65 (1969); *Lethermon v. American Insurance Company*, 129 So. 2d 507 (La. App.

1961); *Dufrene v. St. Charles Parish Police Jury*, 371 So. 2d 378 (La. App. 1979); *Bradley v. Mercer*, 563 P.2d 880 (Alaska 1977).

233 Neb. at 905-06, 448 N.W.2d at 593-94.

However, in the context of the *Musil* holding, the "bona fide settlement negotiations" language quoted from Larson is obiter dictum, for it does not appear that there was any claim in *Musil* that the insurer's lump-sum settlement offer should toll the 30-day period. It is axiomatic that a case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994); *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994).

Further, the *Musil* court's emphasis demonstrates that the purpose for which it cited Larson's treatise was as authority for the proposition that in order to avoid the waiting-time penalty, an employer must, before the time period expires, pay at least the amount for which liability is undisputed, not for the proposition that settlement negotiations may excuse delinquency.

This is further illustrated by the cases cited in *Musil*. In *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987), the claimant cross-appealed the denial of a waiting-time penalty. Although whether a reasonable controversy exists under § 48-125 is a question of fact, see *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 387 N.W.2d 709 (1986), we reasoned that there was only speculation and conjecture as to whether any intervening injury caused the claimant's disability, and, thus, a waiting time penalty was appropriate. In so ruling, we wrote that "[a]s construed by this court, § 48-125 authorizes a 50-percent payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation." *Mendoza*, 225 Neb. at 783, 408 N.W.2d at 288.

Also significant is our reliance in *Musil* on the opinion of the Montana Supreme Court in *Holton v. F.H. Stoltze Land Lbr. Co.*, 195 Mont. 263, 637 P.2d 10 (1981). A study of that case reveals that the claimant therein had injured his back while performing a work-related task. He was rated by his physician as having a

5-percent total body impairment, and the employer's insurer was notified. More than 1 year later, after the insurer's own physician gave the claimant a 10-percent impairment rating, the insurer offered to settle on that basis. The claimant refused and made a counteroffer, but did not hear from the insurer until over 4 years later, when he filed a petition for hearing. The compensation court awarded the claimant benefits but refused to impose a penalty for unreasonable delay in payment. On appeal, the Montana Supreme Court quoted the applicable statute, which read, in pertinent part: " 'When payment of compensation has been unreasonably delayed or refused by an insurer . . . the full amount of the compensation benefits due a claimant . . . may be increased by . . . 20%. . . .' " 195 Mont. at 268, 637 P.2d at 13. See Mont. Code Ann. § 39-71-2907 (1995). The Montana Supreme Court noted that the triggering event for the purpose of awarding penalties was the insurer's receipt of medical verification of a compensable injury and held that although the total amount of compensation was in dispute, the employer's insurer had a duty to promptly pay any undisputed compensation, and further, that the only legitimate excuse for delay in payment was the existence of genuine doubt from a medical or legal standpoint that any liability existed. Because the insurer took no action when the claimant rejected its settlement offer but the parties agreed that at least a 10-percent disability claim should be paid, the Montana Supreme Court imposed a penalty for unreasonable delay.

Thus, *Musil v. J.A. Baldwin Manuf. Co.*, 233 Neb. 901, 448 N.W.2d 591 (1989), sets forth the rule that where the total amount of compensation due for permanent disability is in dispute, the employer has a duty under the provisions of § 48-125(1) to pay within 30 days of the notice of disability any undisputed compensation; the only legitimate excuse for delay in the payment is the existence of a genuine dispute from a medical or legal standpoint that any liability exists.

As no such dispute existed here, it was the obligation of Endicott and Columbia to begin making weekly payments no later than the expiration of 30 days.

The judgment of the Court of Appeals being correct, it is, as noted in the first paragraph hereof, affirmed.

AFFIRMED.