No. 80-282

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

RICHARD J. HOLTON,

Claimant and Cross-Appellant,& Respondent,

vs.

F. H. STOLTZE LAND AND LUMBER COMPANY,
Employer and SCOTT WETZEL SERVICES, INC.,

Defendants and Appellants.

---

Appeal from:    Workers' Compensation Court
                Honorable William E. Hunt, Judge presiding

Counsel of Record:

For Appellants:

Poore, Roth, Robischon and Robinson, Butte,
Montana

James P. Harrington, Butte, Montana

For Respondent:

Goetz and Madden, Bozeman, Montana

---

Submitted on briefs:   April 23, 1981

Decided:NOV 9 - 1981

Filed:NOV 9 - 1981

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In this action the claimant, Richard J. Holton, the employer, F.H. Stoltze Land & Lumber Company, and the insurer, Scott Wetzel Services, Inc., appeal the decision of the Workers' Compensation Court awarding 40% disability of the whole man, refusing to admit an economist's expert testimony, denying imposition of a 20% penalty, and awarding attorney fees from the claimant's benefits.

Richard J. Holton injured his back while "pulling on the green chain" at the Stoltze sawmill on November 8, 1972. In January 1973 claimant's physician, Dr. Burton, performed a laminectomy and disc removal. Claimant recuperated until June 1973, when Dr. Burton cleared him for work of a less physically demanding nature. Claimant then returned to the sawmill and did work considerably less strenuous than his former job but left in one month for an even less strenuous job, with better pay, as an equipment operator for the Union Pacific Railroad. After five months he was laid off due to a reduction in force. Claimant then returned to his career of choice, ranch work, for eighteen months, but had to give it up for less strenuous work. He has been primarily engaged in managing a bar since that time.

During post-surgery employment, claimant has regularly experienced a dull ache in his lower back, general stiffness and pain in his left leg, and, at times, a "sharp shooting pain" in his left leg that lays him up for several days. As a result, the claimant is physically unable to do many activities he did before the injury and works much slower than he had in the past.

On January 4, 1974, claimant's physician, Dr. Burton,

gave him a 5% total body impairment rating, advised him to avoid heavy lifting and warned him of the increased possibility of future back problems.

The insurer was notified of Dr. Burton's report on March 29, 1974. More than a year later, after the insurer's own physician, Dr. Davidson, gave the claimant a 10% impairment rating, the insurer offered to settle on the basis of a 10% disability rating. Claimant refused and made a counteroffer on April 4, 1975, but did not hear from the insurer until August 1979 when the claimant filed a petition for hearing.

Meanwhile the claimant's back problems were exacerbated by injuries on May 20, 1975, and July 3, 1975. On September 21, 1976, a third physician, Dr. Robbins, gave the claimant a permanent, partial impairment rating of 15% of the whole body. Dr. Robbins noted that the 1975 injuries were symptoms of the 1972 injury and did not constitute new injuries.

A workers' compensation trial was held on October 23, 1979, at which claimant tried to introduce the deposition of Harry Goghen, an associate professor of economics at Eastern Montana College, as expert testimony on the issue of loss of earning capacity. The workers' compensation judge refused to admit the deposition because he questioned the facts upon which the economist based his testimony.

In a May 7, 1980, decision the Workers' Compensation Court ruled that the claimant suffered 40% disability of the whole man and is therefore entitled to receive 200 weeks of benefits at $45 per week for a total of $9,000 to be paid in one lump sum. The court denied imposition of a 20% penalty

for unreasonable delay of compensation and directed the successful claimant to pay his attorney $1,000 from the $9,000 lump sum.

Four issues are raised on appeal: (1) Whether there is substantial evidence to support a finding of 40% disability; (2) whether an economist's expert testimony should be admitted to determine loss of earning capacity; (3) whether the facts warrant imposition of a 20% penalty for unreasonable delay; and (4) whether assessing a portion of the attorney fees against a successful claimant is permissible.

## FORTY PERCENT DISABILITY

The first issue presented on appeal is whether there is substantial evidence to support a finding of 40% disabililty of the whole man. "We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision. . ." Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 86-87, 580 P.2d 450, 453.

We find that there is substantial evidence to support the trial court's determination of 40% disability of the whole man, and we affirm.

In determining disability, the court should consider the claimant's age, education, work experience, pain and disability, actual wage loss, and loss of future earning capacity. Flake v. Aetna Life & Cas. Co. (1977), 175 Mont. 127, 129, 572 P.2d 907, 909.

After the claimant's injury, he was repeatedly told by doctors to avoid strenuous work. Thus, the claimant cannot return to his career choice, ranching. Claimant has experience working in a sawmill, as an equipment operator, and as a truck driver; but these are also strenuous jobs. Finally, claimant has studied English and acting in college but has not found employment in these fields. Consequently, claimant's choice of careers has been significantly limited by the injury he received at the age of twenty-five.

Medical testimony of Dr. Robbins indicated that as of 1976 the claimant suffered 15% impairment of the whole body. Claimant testified that his physical movements have been constricted and that he continues to experience pain and stiffness. Claimant has been compensated for wage loss immediately following his injuries, but the injury also adversely affects his future earning capacity, for which he has not been compensated. Therefore, we conclude that there is substantial evidence supporting the trial court's finding of 40% disability of the whole man.

ECONOMIST'S EXPERT TESTIMONY

The second issue raised on appeal is whether the Workers' Compensation Court erred in refusing to admit the deposed expert testimony of an economist in determining loss of earning capacity. The deposition was objected to at trial on several grounds. First, there were other adequate methods of determining loss of earning capacity; thus, the testimony was redundant. Second, the economist's opinion was based on facts taken from one vague letter written to the economist by claimant's attorney. Third, the economist

based his estimated "ranch salary forgone" on the free room and board benefits a married ranch employee would receive, when actually the claimant was single.

Since we have already held that there is substantial evidence in the record, without the economist's testimony, to support the court's finding of 40% disability of the whole man, we need not address whether the economist's testimony should have been admitted.

PENALTY

The third issue presented for review is whether the facts of this case warrant a 20% penalty for unreasonable delay as provided by section 39-71-2907, MCA. We hold that a penalty is justified. Section 39-71-2907, MCA, provides:

> "Increase in award for unreasonable delay or refusal to pay. When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge, and such a finding constitutes good cause to rescind, alter, or amend any order, decision, or award previously made in the cause for the purpose of making the increase provided herein."

Although the penalties provision of section 92-849, R.C.M. 1947, was effective at the time of the 1972 injury, section 39-71-2907, MCA, was effective when the underlying action was litigated, and therefore the current penalties provision, section 39-71-2907, MCA, controls. State, Department of Highways v. Olsen (1975), 166 Mont. 139, 146,

531 P.2d 1330, 1333-1334; City of Bellingham v. Eiford Construction Company (1974), 10 Wash.App. 606, 519 P.2d 1330, 1331-1332.

The triggering event for the purpose of awarding penalties for unreasonable delay or refusal to pay compensation is the insurer's receipt of medical verification of a compensable injury. Unless such verification contradicts other evidence sufficient to make the verification inherently incredible, the insurer's duty to pay commences and failure to pay (or deny a claim) will expose the carrier to the possibility of penalties after thirty days. Silsby v. State Acc. Ins. Fund (Or.App. 1979), 592 P.2d 1074, 1078; section 39-71-606, MCA.

Here the claimant's physician reported to the insurer on March 29, 1974, that claimant suffered a 5% impairment of the whole body. Sometime prior to March 31, 1975, the insurer's own physician estimated a 10% impairment of the whole body. Yet, the insurer took no action between April 4, 1975, when the claimant rejected a 10% settlement offer, and August 13, 1979, when the claimant petitioned for a hearing.

The language of the statute makes it clear that the insurer has no absolute right to delay the payment of compensation until a formal hearing. See, Kerley v. Workmen's Compensation Appeals Board (1971), 4 Cal.3d 223, 227, 93 Cal.Rptr. 192, 195, 481 P.2d 200, 203; Gallamore v. Workers' Compensation Appeals Board (1979), 23 Cal.3d 815, 822, 153 Cal.Rptr. 590, 593, 591 P.2d 1242, 1245. Although the total amount of compensation may be in dispute, the insurer has a duty to promptly pay any undisputed compensation. See,

Kerley, supra, 481 P.2d at 205; Berry v. Workmen's Compensation Appeals Board (1969), 81 Cal.Rptr. 65, 68, 2,67 *supp* Cal.2d 381; cf., Fermo v. Superline Products (1978), 175 Mont. 345, 574 P.2d 251, 253; Steffes, supra, 580 P.2d at 455; Gene Wight v. Hughes Livestock, Inc. (1981), _____ Mont. _____, _____ P.2d _____, 38 St.Rep. 1632. Thus, the insurer in the instant case was at least responsible for payment of a 10% disability claim prior to the formal hearing. The balance of the claim shall be paid when the disability issue is finally resolved.

Once the claimant has shown there is a delay in payment of compensation, the insurer has the burden of justifying the delay. Berry, supra, 81 Cal.Rptr. at 67; Kerley, supra, 481 P.2d at 203. However, the only legitimate excuse for delay of compensation is the existence of genuine doubt, from a medical or legal standpoint, that any liability exists. Berry, supra, 81 Cal.Rptr. at 68; Kerley, supra, 481 P.2d at 203; Pascoe v. Workmen's Compensation Appeals Board (1975), 120 Cal.Rptr. 199, 206, 46 Cal.App.3d 146; Norgard v. Rawlinsons & New System Laundry (1977), 30 Or.App. 999, 569 P.2d 49, 52.

Here, although there was a dispute as to the total compensation due, as of March 31, 1975, both parties agreed that at least a 10% disability claim should be paid. Thus, there was no legitimate excuse for delay in paying the 10% disability claim prior to the hearing. The penalty for unreasonable delay, as provided by section 39-71-2907, MCA, is justified.

ATTORNEY FEES

The fourth issue presented on appeal is whether the workers' compensation judge has authority to assess a portion of the attorney fees against a successful claimant. The workers' compensation judge awarded the claimant 40% disability of the whole man, totaling $9,000, to be paid in one lump sum. The workers' compensation judge then directed the successful claimant to pay his attorney $1,000 from that lump sum. We hold that the workers' compensation judge has no authority to assess a successful claimant for attorney fees.

> Section 39-71-612, MCA, provides:
>
> "Costs and attorneys' fees payable based on difference between amount paid by insurer and amount later found compensable. (1) If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney's fee as established by the division or the workers' compensation judge if the case has gone to a hearing, based solely upon the difference between the amount settled for or awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.
>
> "(2) When an attorney's fee is awarded against an employer or insurer under this section there may be further assessed against the employer or insurer reasonable costs, fees, and mileage for necessary witnesses attending a hearing on the claimant's behalf. Both the necessity for the witness and the reasonableness of the fees must be approved by the division or the workers' compensation judge." (Emphasis added.)

While the workers' compensation judge may determine which attorney fees are reasonable, the clear meaning of the statute is to provide attorney fees above and beyond the compensation awarded to a successful claimant. Assessing a

successful claimant $1,000 for attorney fees clearly reduces his net compensation and thus cannot be allowed. Smith v. Pierce Packing Co. (1978), 177 Mont. 267, 273, 581 P.2d 834, 838; Myers v. 4B's Restaurant, Inc. (1977), 172 Mont. 159, 161, 561 P.2d 1331, 1333.

In summary, (1) we affirm the trial court's finding of 40% disability of the whole man; (2) we impose a 20% penalty for unreasonable delay; and (3) we hold that a Workers' Compensation Court cannot assess a successful claimant for attorney fees. To the extent that there is already substantial evidence to support a finding of 40% disability, we do not address the issue of whether the economist's expert testimony should be admitted. We remand so that the trial court may award appropriate attorney fees and assess the 20% penalty.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-